R. SCOTT BEST, Plaintiff v. AMBER L. GALLUP, Defendant

No. COA10-1488

(Filed 6 September 2011)

1. **Child Custody and Support—acting inconsistently with paramount parental status—erroneous dismissal of claim**

   The trial court erred by dismissing plaintiff's child custody claim based on its conclusion that defendant adoptive mother had not acted inconsistently with her paramount parental status. The findings established that defendant ceded paramount decision-making authority by bringing a nonparent into the family unit, representing that the nonparent was a parent, and voluntarily giving custody of the child to the nonparent without creating an expectation that the relationship would be terminated.

2. **Child Visitation—best interests of child**

   The trial court properly concluded that it was in the best interest of the minor child to have visitation with plaintiff.

Appeal by plaintiff from order entered 10 June 2010 by Judge Lori Christian in District Court, Wake County. Heard in the Court of Appeals 26 April 2011.

*Robinson & Lawing, LLP, by Michelle D. Connell, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals the trial court's order dismissing his custody claim. For the following reasons, we reverse and remand.

I. Background

In 2004, plaintiff and defendant had a romantic relationship and "informally adopted and raised together Defendant's niece, Ruth[.]"[1] In 2008, defendant legally adopted Ruth; plaintiff and defendant had plans to marry once plaintiff returned from a job in Iraq so that he too could legally adopt Ruth. While plaintiff was in Iraq, "Defendant informed Plaintiff she was leaving him."

1. A pseudonym will be used to protect the identity of the minor.

On 3 February 2010, plaintiff filed a verified complaint seeking custody of Ruth and an ex parte temporary custody order reinstating visitation with her. On 10 February 2010, defendant filed a motion to dismiss plaintiff's complaint or remove the action for improper venue. On 5 March 2010, defendant filed a motion to dismiss for plaintiff's lack of standing to bring the custody action.

On 12 March 2010, defendant's motions were heard; at the hearing, the trial court specifically noted that it would only be considering defendant's motions to dismiss and change venue and not the merits of the custody claim because "if you prevail, then it will be transferred; if you don't, then you'll have to go through with the mediation" scheduled for 1:00 p.m. that same day. Nevertheless, and despite the fact that the parties would have had no reason to be prepared to proceed on the merits of the custody claim, the "motions hearing" ultimately became a custody hearing during which the trial court considered the several affidavits in the case and heard testimony from Jeff Wagner, defendant's live-in boyfriend and plaintiff himself. Both Mr. Wagner and plaintiff testified extensively about Ruth and their involvement with her. Defendant did not object to the trial court's consideration of testimonial evidence regarding custody nor to the trial court's consideration of the merits regarding custody. On 10 June 2010, the trial court entered an order, based on the 12 March 2010 hearing which (1) denied defendant's motion to dismiss or remove the case for a different venue; (2) denied defendant's motion to dismiss for lack of standing, and (3) dismissed the custody case upon unstated grounds. Plaintiff appeals.

## II. Custody

On appeal, neither party has challenged the trial court's denial of defendant's motions for change of venue or the motion to dismiss for lack of standing, and thus we only address the custody portion of the trial court's order. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief . . . will be taken as abandoned.") Furthermore, neither party has challenged the findings of fact, and thus they are binding on appeal. *Peters v. Pennington*, ___ N.C. App. ___, ___, 707 S.E.2d 724, 733 (2011) ("Unchallenged findings of fact are binding on appeal.").

### A. Conduct Inconsistent with Paramount Parental Status

[1] Here, plaintiff contends that the trial court's binding findings of fact do not support the trial court's conclusion of law that defendant had not acted inconsistently with her parental rights and "do not sup-

port the court's decree[,]" (original in all caps), to dismiss plaintiff's case. "Under our standard of review in custody proceedings . . . [w]hether . . . findings of fact support the trial court's conclusions of law is reviewable de novo." *Mason v. Dwinnell*, 190 N.C. App. 209, 221, 660 S.E.2d 58, 66 (2008).

This case is controlled by *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997) and *Boseman v. Jarrell*, 364 N.C. 537, 704 S.E.2d 494 (2010); indeed, the findings of fact to a large extent seem to track the language of these cases. In *Boseman*, our Supreme Court stated,

> A parent has an interest in the companionship, custody, care, and control of his or her children that is protected by the United States Constitution. So long as a parent has this paramount interest in the custody of his or her children, a custody dispute with a nonparent regarding those children may not be determined by the application of the best interest of the child standard.

> A parent loses this paramount interest if he or she is found to be unfit or acts inconsistently with his or her constitutionally protected status. However, there is no bright line beyond which a parent's conduct meets this standard. . . .

> . . . .

> In *Price v. Howard* we observed a custody dispute between a natural mother and a nonparent. The child in that case was born into a family unit consisting of her natural mother and a man who the natural mother said was the child's father. The mother chose to rear the child in a family unit with plaintiff being the child's *de facto* father.

> After illustrating the creation of the family unit in *Price*, we focused our attention on the mother's voluntary grant of nonparent custody. . . .

> . . . .

> Thus, under *Price, when a parent brings a nonparent into the family unit, represents that the nonparent is a parent, and voluntarily gives custody of the child to the nonparent without creating an expectation that the relationship would be terminated, the parent has acted inconsistently with her paramount parental status.*

> In *Mason v. Dwinnell*, 190 N.C. App. 209, 660 S.E.2d 58 (2008), our Court of Appeals applied our decision in *Price* to facts

BEST v. GALLUP

[215 N.C. App. 483 (2011)]

quite similar to those in the case *sub judice*. In *Mason* the parties jointly decided to create a family and intentionally took steps to identify the nonparent as a parent of the child. . . . They shared caretaking and financial responsibilities for the child. As a result of the parties' creation, the nonparent became the only other adult whom the child considers a parent.

The parent in that case also relinquished custody of the minor child to the nonparent with no expectation that the nonparent's relationship with the child would be terminated. The parent chose to share her decision-making authority with the nonparent. The parent also executed a "Parenting Agreement" in which she agreed that the nonparent should participate in making all major decisions regarding their child. . . .

. . . .

As such, the natural parent created along with the nonparent a family unit in which the two acted as parents, shared decision-making authority with the nonparent, and manifested an intent that the arrangement exist indefinitely.

The Court of Appeals recognized that the degree of custody relinquishment in *Mason* differed from that in *Price*[, but] . . . the similarity in both cases is that *if a parent cedes paramount decision-making authority, then, so long as he or she creates no expectation that the arrangement is for only a temporary period, that parent has acted inconsistently with his or her paramount parental status.*

The record in the case *sub judice* indicates that defendant intentionally and voluntarily created a family unit in which plaintiff was intended to act—and acted—as a parent. . . . The record also contains ample evidence that defendant allowed plaintiff and the minor child to develop a parental relationship. . . .

Moreover, the record indicates that defendant created no expectation that this family unit was only temporary. . . .

. . . [D]efendant has acted inconsistently with her paramount parental status.

364 N.C. at 549-53, 704 S.E.2d at 502-05 (citations, quotation marks, ellipses, and brackets omitted). Furthermore,

the focus must . . . be on the legal parent's intent during the formation and pendency of the parent-child relationship between

the third party and the child. Intentions after the ending of the relationship between the parties are not relevant because the right of the legal parent does not extend to erasing a relationship between her partner and her child which she voluntarily created and actively fostered simply because after the party's separation she regretted having done so.

*Estroff v. Chatterjee*, 190 N.C. App. 61, 70-71, 660 S.E.2d 73, 79 (2008) (citations, quotation marks, and brackets omitted).

Before reviewing the trial court's findings of fact in light of *Price* and *Boseman*, we note that the trial court's comments upon rendering the decision reflect a misapprehension of these cases. The trial court appears to have been under the impression that because defend-ant had legally adopted Ruth, but plaintiff had not, that plain-tiff could not, as a matter of law, prevail on his custody claim. The trial court stated:

> She has adopted the child. She's the parent of the child. He has not adopted the child. And do I think it stinks? I think it stinks. He certainly has paid—she has accepted money from him. And—and—but she has made this choice. I have to respect her Constitutional right to make decisions with regard to her child. That's really not before me. If I understand correctly, it's really just the venue issue and the standing. I find that he has standing because he has connection with the child, but with regards to the actual lawsuit, she will prevail. The law is going to have her prevail.
>
> So I don't know what you guys want to do from here. She's right. I don't like it personally. I—I think it's not in the best interest of the child.

The trial court made the following findings of fact, which are not challenged by either party and are binding on this Court:

> 7.  . . . the parties informally adopted and raised together Defendant's niece . . . .
>
> . . . .
>
> 10.  In July 2004, the parties began caring for Ruth full-time. Ruth lived with the parties in their homes in Mount Holly, North Carolina. Each shared equally in the care and custody of Ruth.
>
> . . . .

12. In June 2004, . . . [a]lthough the parties did not live together during this time, Plaintiff continued to share in the care and custody of Ruth by caring for her while Defendant worked and keeping her overnight while Defendant was out of town. . . .

. . . .

15. From July 2004 until September 2005, . . . both parties were primary caretakers and custodians of the minor child. Defendant voluntarily created a family unit [by allowing plaintiff to take care of Ruth, attend Ruth's doctor's appointments, and pick Ruth up from daycare.]

. . . .

17. From September 2005 until late-December 2009, the parties continued to function as a family unit in the following ways:

    a. The minor child calls Plaintiff "Daddy" with Defendant's knowledge and consent.

    b. Plaintiff represented himself as the minor child's father with Defendant's knowledge and consent.

    c. Defendant refers to Plaintiff as "Daddy" and "Dad" when speaking about Plaintiff to the minor child.

    d. Plaintiff, a physician's assistant, treated Ruth for any minor illnesses.

    e. Plaintiff paid for Ruth's dental expenses.

    f. The parties lived together, shared Ruth's expenses, vacationed together, and shared custody and care of the minor child.

    g. In July of 2006, Defendant purchased a home in Garner, North Carolina for the parties and the minor child.

    h. After visiting different daycares in the area, the parties jointly selected the   pre-school programs . . . . Defendant allowed Plaintiff to pay for a substantial portion of the minor child's daycare expenses and tuition and after-school expenses[.]

    i. Defendant listed Plaintiff on the daycare sheet and authorized Plaintiff's access to pick up the minor

child from daycare. Plaintiff actively participated in the minor child's preschool activities by attending arts & crafts classes with the minor child and reading stories to the kids.

j. Ruth's preschool teachers referred to Plaintiff has Ruth's father.

. . . .

. . . .

20. The parties agreed that they would marry when Plaintiff finished his rotation in Iraq. Plaintiff would then be able to legally adopt Ruth.

21. Although both parties interviewed with Wake County Department of Health and Human Services concerning Ruth's legal adoption, Plaintiff was unable to join in the adoption petition as a party because . . . if the petitioner for adoption is unmarried, no other individual may join in the petition.

22. After making the decision to adopt Ruth and get married, the parties announced the news to Plaintiff's former co-workers and celebrated . . . .

. . . .

25. While Plaintiff worked in Iraq, the parties continued to function as a family unit . . .

. . . through telephone, video, and email [and by plaintiff a will leaving defendant and Ruth as his beneficiaries and a power of attorney for defendant before his departure to Iraq].

. . . .

. . . .

29. . . . [Even after "Defendant informed Plaintiff she was leaving him"] the parties continued to function as a family unit . . . .

. . . .

. . . .

34. Defendant voluntarily created a family unit by authorizing Plaintiff's access to Ruth's daycare and pre-school programs, allowing Plaintiff to jointly care for and share in decision making

regarding Ruth's education, nutrition, potty training, discipline and overall raising of the minor child; allowing Plaintiff to attend Ruth's extracurricular activities together, and allowing Ruth to call Plaintiff "Daddy" alone and in front of others.

. . . .

38.  Plaintiff is Ruth's *de facto* father.

. . . .

40.  In October 2009, Plaintiff designated Ruth the sole beneficiary of his retirement account death benefits.

The findings of fact establish that defendant "has acted inconsistently with her paramount parental status" by "ced[ing] paramount decision-making authority" and "bring[ing] a nonparent into the family unit, represent[ing] that the nonparent is a parent, and voluntarily giv[ing] custody of the child to the nonparent without creating an expectation that the relationship would be terminated[.]" *Boseman*, 364 N.C. at 550-52, 704 S.E.2d at 504. The trial court's conclusion of law that defendant "has not acted inconsistent with her constitutionally protected rights as an adoptive mother" and the dismissal of the custody claim are therefore in error.

B. Best Interest of the Child

> **[2]** In *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), our Supreme Court established that the best interest of the child standard applies in a custody dispute between a legal parent and a non-parent when clear and convincing evidence demonstrates that the legal parent's conduct has been inconsistent with his or her constitutionally protected status.

*Davis v. Swan*, ___ N.C. App. ___, ___, 697 S.E.2d 473, 476-77 (2010), *disc. review denied*, 365 N.C. 76, 706 S.E.2d 239 (2011). A determination regarding the best interest of the child will not be disturbed unless there is a showing of abuse of discretion. *Mason*, 190 N.C. App. at 230, 660 S.E.2d at 71. ("It is well established that the district court's determination regarding the best interest of the child will not be disturbed unless there is an abuse of discretion.") Here, the trial court determined that "[i]t is in the best interest of the minor child that she would have visitation with Plaintiff." Neither party challenges the trial court's determination as to best interest of the child and based on the binding findings of fact, we agree.

III. Conclusion

In conclusion, the trial court erred in concluding that defendant had not acted inconsistently with her paramount parental status, but correctly determined that it was in the best interest of Ruth to have visitation with plaintiff. Accordingly, as to the custody portion of the order, we reverse the dismissal of the plaintiff's custody claim and remand for the trial court to order a custodial schedule, including but not limited to visitation with plaintiff, and to address any other custodial issues as necessary for the best interest of the child.

REVERSED AND REMANDED.

Judges McGEE and BEASLEY concur.