**PELTZER v. PELTZER**

[222 N.C. App. 784 (2012)]

SONIA RAPAPORT PELTZER, Plaintiff v. DAVID ERIC PELTZER, Defendant

No. COA12-41

(Filed 18 September 2012)

### 1. Divorce—equitable distribution—unequal division—findings—postseparation payment—distributional factor

The trial court did not abuse its discretion in an equitable distribution case by making an unequal division of marital property. Defendant retained an unequal distribution of 55% to 45% in his favor rather than the 80% to 20% division in plaintiff's favor as defendant contended. Further, the trial court considered the factors in N.C.G.S. § 50-20(c). Finally, the trial court's findings showed that it considered defendant's postseparation payment as a distributional factor.

### 2. Divorce—equitable distribution—distributive award—liquid assets

The trial court did not abuse its discretion in an equitable distribution case by concluding that defendant had sufficient liquid assets to satisfy the distributive award. The trial court's order of an 18 month period of $2,000 payments was reasonable, as defendant's monthly disposable income of $8,500 would be sufficient to cover this portion of the distributive award. Also, the marital residence could be refinanced or sold to cover the remaining amount to be paid in 18 months, giving defendant sufficient time to sell or refinance the property.

### 3. Divorce—equitable distribution—postseparation payments—maintenance and preservation of marital residence

The trial court did not abuse its discretion in an equitable distribution case by allegedly failing to consider postseparation payments made by defendant for the benefit of the marital estate. The trial court gave proper consideration of defendant's contributions to maintain and preserve the marital residence pursuant to N.C.G.S. § 50-20(c)(11a).

### 4. Divorce—equitable distribution—valuation—medical practice—invited error—tax consequences—discount

The trial court did not err by allegedly adopting a false value of defendant's interest in his medical practice or by failing to consider the tax consequences with respect to its valuation. Any

error in the trial court's reliance on defendant's expert witness in its finding on valuation or methodology was invited error. Further, the trial court was not required to make a finding regarding speculative or hypothetical tax consequences of the sale of defendant's medical practice since the trial court did not order defendant's medical practice to be sold to satisfy the distributive award. However, the case was remanded to the trial court for clarification of finding of fact 91 regarding the "discount" in the valuation of the medical practice.

Appeal by defendant from order entered 4 May 2011 by Judge C. Thomas Edwards in District Court, Catawba County. Heard in the Court of Appeals 16 August 2012.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for plaintiff-appellee.*

*Crowe & Davis, P.A., by H. Kent Crowe, for defendant-appellant.*

STROUD, Judge.

David Eric Peltzer ("defendant") appeals from the trial court's equitable distribution order. For the following reasons, we affirm in part the trial court's order and remand for clarification of a finding of fact.

## I. Background

On 1 March 2006, Sonia Rapaport Peltzer ("plaintiff") filed a complaint alleging claims for *inter alia* divorce from bed and board and equitable distribution. On 2 May 2006, defendant filed his answer to plaintiff's complaint raising a counterclaim for *inter alia* equitable distribution, which was subsequently amended on 8 May 2006. On 17 May 2006, plaintiff filed an equitable distribution affidavit, disclosing "all marital and separate property known to [her][,]" which was subsequently amended on 1 June 2006 and 5 June 2007. The parties were granted a divorce by judgment entered 7 December 2006. On 27 February 2007, defendant filed an equitable distribution affidavit, disclosing "all marital and separate property." On 14 May 2009, the trial court entered an equitable distribution pretrial order, stating the parties' stipulations and limiting the issues for trial. On 10 July 2009, defendant filed a motion regarding the equitable distribution trial, requesting that plaintiff have a ring appraised, the deed for the time-share be returned to defendant, the pretrial order be amended to per-

mit defendant to present expert testimony regarding values of the marital residence, and to allow defendant to "call Mark Snell, CPA as an expert witness." On 3 August 2009, the trial court entered an order, requiring plaintiff to submit the ring for appraisal and defendant to submit his contentions as to the date of separation value of his medical practice, as he had failed to state a value in his Equitable Distribution Affidavit. On 14 August 2009, defendant submitted his list of expert witnesses he planned to call at trial, including Mark A. Snell, CPA. Following a trial from 12 to 16 October 2009, the trial court on 4 May 2011, entered an equitable distribution order. Defendant filed notice of appeal from the trial court's equitable distribution order on 2 June 2011. On appeal, defendant argues that (1) "the trial court erred in making an unequal division of martial property[;]" (2) the equitable distribution order "does not contain any provision indicating [he] has sufficient liquid assets to satisfy the distributive award[;]" (3) "the trial court committed reversible error by failing to consider post[-]separation payments made by the spouse for the benefit of the marital estate[;]" (4) "the trial court reversibly erred by adopting a false value of the defendant's interest in Newton Family Practice and did not consider the tax consequences with respect to its valuation[;]" and (5) "Because of the multitude of errors in classification, valuation, and distribution" defendant is entitled to a new equitable distribution trial.

## II. Standard of review

We have stated that

> [t]he standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.

> *Pegg v. Jones*, 187 N.C. App. 355, 358, 653 S.E.2d 229, 231 (2007) (citations and quotation marks omitted), *aff'd per curiam*, 362 N.C. 343, 661 S.E.2d 732 (2008). "The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pulliam v. Smith*, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998) (citations and quotation marks omitted).

As to the actual distribution ordered by the trial court, "[w]hen reviewing an equitable distribution order, the standard of review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *Petty v. Petty*, N.C. App. , , 680 S.E.2d 894, 898 (2009) (citations and quotation marks omitted), *disc. review denied and appeal dismissed*, 363 N.C. 806, 691 S.E.2d 16 (2010).

*Stovall v. Stovall*, 205 N.C. App. 405, 407-08, 698 S.E.2d 680, 683 (2010). The trial court's unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal. *Best v. Gallup*, _____ N.C. App. _____, _____, 715 S.E.2d 597, 598 (2011) (citation omitted), *appeal dismissed and disc. review denied*, _____ N.C. _____, 724 S.E.2d 505 (2012).

### III. Unequal Division

**[1]** Defendant argues that the trial court abused its discretion in making an unequal division of marital property. Defendant argues that the marital property was unequally divided, with plaintiff receiving 80% and him receiving only 20% of the marital property and that the trial court failed to make findings explaining why an equal division would not be equitable. In illustrating his point, defendant states that plaintiff received $85,000 of his separate property, in a Fidelity account, as stated in findings of fact 68 and 69, but no credit was given to him for this receipt of his separate property. Defendant further argues that the trial court made no specific findings as to the factors contained in N.C. Gen. Stat. § 50-20(c) in its unequal division but only "broad statements" in findings 90-92 and 99. Defendant concludes that because of these errors the case should be remanded for further findings.

Plaintiff counters that defendant actually received an "unequal distribution [of] 45% to 55% in favor of Defendant." (emphasis in original). Plaintiff argues that the trial court "specifically considered a number of distributional factors [from N.C. Gen. Stat. § 50-20(c)] in awarding Defendant an unequal distribution" in its findings of fact, which supported the trial court's "determination [that] an unequal distribution was equitable[.]" Plaintiff argues that defendant's argument that he is entitled to a dollar-for-dollar credit for the $85,000 fails because (1) the trial court properly considered this post-separation payment of separate property from investment accounts as a distributive factor in lieu of giving defendant a dollar-for-dollar

credit and since there was a 55% distribution in his favor this did not result in any prejudice to him and (2) defendant was not entitled to distribution of the post-separation use of his separate property because separate property is not subject to equitable distribution.

N.C. Gen. Stat. § 50-20(c) provides that

> [t]here shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. The court shall consider all of the following factors under this subsection[.]

N.C. Gen. Stat. § 50-20(c) (2007). The statute goes on to list distributive factors (1) through (12). *See id.* Where the trial court decides that an unequal distribution is equitable, the court must exercise its discretion to decide how much weight to give each factor supporting an unequal distribution. *Mugno v. Mugno*, 205 N.C. App. 273, 278, 695 S.E.2d 495, 499 (2010) (citation omitted). We have further stated that "[t]he trial court must . . . make specific findings of fact regarding each factor specified in N.C. Gen. Stat. § 50-20(c) (2001) on which the parties offered evidence." *Embler v. Embler*, 159 N.C. App. 186, 188, 582 S.E.2d 628, 630 (2003) (citing *Rosario v. Rosario*, 139 N.C. App. 258, 260-61, 533 S.E.2d 274, 275-76 (2000)). A blanket statement that the trial court considered or gave "due regard" to the distributional factors listed in N.C. Gen. Stat. § 50-20(c) is insufficient as a matter of law. *Rosario*, 139 N.C. App. at 262, 533 S.E.2d at 276.

First, we note that it appears that defendant has miscalculated the percentages of the marital estate awarded to each party. The trial court found the net marital estate to be $886,234.00, which is not challenged by defendant. *See Best*, _____ N.C. App. at _____, 715 S.E.2d at 598. Of this amount, defendant received property and debts with a net value of $708,161.00. Defendant was also ordered to pay a distributive award of $220,732.00, secured by the marital residence located in Newton, North Carolina. Therefore, defendant retained $487,429.00 of the marital estate, amounting to an unequal distribution of 55% to 45% in defendant's favor, rather than the 80% to 20% division in plaintiff's favor, as defendant contends. We also note that it would have been helpful for the order to be more specific as to the distributional percentages; as noted in more detail below, the equitable distribution order is disorganized and quite difficult to understand, but by using some basic math, we can determine the distributional percentages.

PELTZER v. PELTZER

[222 N.C. App. 784 (2012)]

Also, contrary to defendant's arguments, the trial court concluded that "an Unequal Distribution of the Net Marital Estate is Equitable." In support of this conclusion, the trial court made several specific findings of fact related to several of the equitable distribution factors listed in N.C. Gen. Stat. § 50-20(c). We concede that picking out the findings which address the factors under N.C. Gen. Stat. § 50-20(c) is challenging, as the order does not address the identification, classification, and valuation of the property and the distributional factors in any logical or organized manner, but instead is written in a style perhaps best described as stream of consciousness. While stream of consciousness is a well-recognized literary style, it is not well suited to court orders.[1] Yet after sifting through the findings, we find that we can match them up with the statutory distributional factors. Findings of fact 26-37, 49-50, 52, 58-60, 66-67, 73, 78, 82-83, and 93 list the parties' income, properties, and liabilities, including their current medical practices, pursuant to the first factor N.C. Gen. Stat. § 50-20(c)(1). In findings 9-10, 41-43, and 99, the trial court considered factor N.C. Gen. Stat. § 50-20(c)(3), making findings regarding the "fourteen plus" year duration of their marriage, and the parties' ages, and physical and mental health. Findings of fact 70 and 91 relate to defendant's "deferred compensation" retirement accounts and profit sharing plans, pursuant factor N.C. Gen. Stat. § 50-20(c)(5). Pursuant to factor N.C. Gen. Stat. § 50-20(c)(6), the trial court made findings 13-14, 17, 26-27, 44, and 80-81 regarding the contributions of the parties as "spouse, parent, wage earner or homemaker," including defendant's role as the wage earner for the family, plaintiff's reduction in workload and retirement to care for their children, and the very serious and long term medical needs of two of their four children. Findings 13, 26, 44, 46, 69, 81, and 94 relate to the parties' contributions to their education or development of the parties' medical practices, pursuant to factor N.C. Gen. Stat. § 50-20(c)(7). Also findings 48-50, 52-53, and 72-73 relate to defendant's non-liquid interest in his medical practice and note the difficulty in valuing this interest, pursuant to factors N.C. Gen. Stat. § 50-20(c)(9) and (10). Finding of fact 72 discusses the tax consequences of selling defendant's interest in his medical practice, pursuant to factor N.C. Gen.

---

1. Magistrate Judge Carlson further explains this literary device: "Like some of the works of the great Irish literary figure, James Joyce, aspects of this pleading are written in a stream-of-consciousness style, one which presumes that the reader has a unique insight into the thoughts of the writer and can thus give meaning to seemingly unconnected ideas. In the hands of a literary stylist like Joyce, this manner of expression can be challenging; in the hands of counsel it is sometimes incomprehensible." *Lease v. Fishel*, 712 F. Supp. 2d 359, 376 (M.D. Pa. 2010).

Stat. § 50-20(c)(11). Findings of fact 61-65, 75-76, and 96 relate to defendant's efforts to maintain their marital or divisible property since separation, including lawn care services, and mortgage, insurance, and property tax payments, pursuant to factor N.C. Gen. Stat. § 50-20(c)(11a). Defendant has not identified any other potential distributional factor for which evidence was presented that the trial court failed to address. *See Embler,* 159 N.C. App. at 188, 582 S.E.2d at 630. Accordingly, we find no merit in defendant's argument that the trial court did not specifically consider the factors in N.C. Gen. Stat. § 50-20(c).

As to defendant's argument that he received "no credit . . . for the Plaintiff's receipt of over $85,000 of the Defendant's separate property" in 2005 for her education expense and other expenses after their separation on 12 October 2004, we note that the trial court in findings of fact 68 and 69 made detailed findings regarding these payments. It was considered as a factor in equitably distributing the marital estate, as specifically stated in finding of fact 97: "The Court has also considered that the Defendant voluntarily disbursed to the Plaintiff $85,179 from his Separate Property, in the 1986 Vanguard Investment Accounts and successor account[.]" Post- separation payments may be treated as a distributional factor or as a dollar-for-dollar credit in the division of the property. *Squires v. Squires,* 178 N.C. App. 251, 261, 631 S.E.2d 156, 162 (2006). Here, the trial court's findings show that it considered defendant's post-separation payment as a distributional factor and, accordingly, we find no abuse of discretion. Defendant's arguments are overruled. ·

## IV. Sufficient Liquid Assets

[2] Defendant next contends that the trial court erred in making its equitable distribution order as it "does not contain any provision indicating [defendant] has sufficient liquid assets to satisfy the distributive award" of over $220,000. Defendant argues that there is no evidence that he has liquid assets totaling the amount of the distributive award, beyond his ownership interest in his medical practice which has "no realistic market" for those shares to be sold, and, if sold, would result in negative tax consequences for him. Defendant concludes that this Court should remand to the trial court for "findings regarding the source of funds for the payment of the distributive award and the tax consequences" and if he is to take out a loan or withdraw from his investment accounts to satisfy this distributive award, to consider the negative tax consequences of withdrawal and his payment of interest on such a loan, and his payment of alimony

and child support. Plaintiff counters that the trial court's order shows that it did not intend for defendant to liquidate his interest in his medical practice to satisfy this distributive award but intended this distributive award to be satisfied initially by defendant's disposable income, after child support, and by the sale or refinance of the marital residence which was used as security for this distributive award.

This Court stated that, "if a party's ability to pay an award with liquid assets can be ascertained from the record, then the distributive award must be affirmed." *Pellom v. Pellom*, 194 N.C. App. 57, 69, 669 S.E.2d 323, 329-30 (2008), *disc. review denied*, 363 N.C. 375, 678 S.E.2d 667 (2009). We have further held that "the money derived from refinancing the mortgage on the marital home [is] a source of liquid funds available to [a] defendant." *Allen v. Allen*, 168 N.C. App. 368, 376, 607 S.E.2d 331, 337 (2005).

Here, the trial court found that "Defendant has net available disposable income after the payment of child support in the approximate amount of $8,500.00 per month." The trial court further found that although the parties' marital residence had a "net Date of Separation value of $131,009.00" the net value had by the date of distribution increased to $192,931.00. Defendant does not challenge these findings. *See Best*, ___ N.C. App. at ___, 715 S.E.2d at 598. As to the distributive award, the trial court ordered:

> 3. That the Defendant shall pay to the Plaintiff a Distributive Award in the amount of $220,732.00 at the rate of $2,000.00 per month beginning July 1, 2011, and alike in similar sum on the first day of each month thereafter through and including December 1, 2012 (18 x $2,000 = $36,000). The balance of the Distributive Award $184,732.00 ($220,732.00 - $36,000.00 = $184,732.00) shall be paid by the Defendant to the Plaintiff on or before January 1, 2013. That the balance of the Distributive Award $184,732.00 shall accrue at the legal rate on and after January 1, 2013.

> 4. That the Distributive Award in the amount of $220,732.00 shall be a lien against the residence at 1457 O'Brian Drive, Newton, North Carolina until paid in full.

The trial court's order of an 18 month period of $2,000 payments was reasonable, as defendant's monthly disposable income of $8,500 would be sufficient to cover this portion of the distributive award. Also, the marital residence, valued at the date of distribution at $192,931.00, could be refinanced or sold, to cover the remaining $184,732.00, to be paid in 18 months, giving defendant sufficient time

to sell or refinance the property. *See Allen,* 168 N.C. App. at 376, 607 S.E.2d at 337. As sufficient "liquid assets can be ascertained from the record," to pay the distributive award, we must affirm this portion of the trial court's order. *See Pellom,* 194 N.C. App. at 69, 669 S.E.2d at 329-30. As the findings show there were sufficient funds from defendant's monthly disposable income and equity in the marital residence to pay for the distributive award, we need not address defendant's argument regarding the liquidation of his medical practice and the resulting tax consequences. Accordingly, we find no abuse of discretion and defendant's arguments are overruled.

## V. Post-Separation Payments

**[3]** Defendant next contends that the trial court erred "by failing to consider post separation payments made by the spouse for the benefit of the marital estate." Defendant contends that although the trial court found that he had paid routine maintenance for the former marital residence and paid the mortgage on the marital residence since the date of separation, the trial court did not assign values to the maintenance nor did it total the amount of mortgage payments, which would have been in excess of $25,000.00. Defendant argues that although the trial court "considered" these acts to preserve the parties' marital and divisible property, these findings are too general to allow for proper appellate review and would not support the "80/20" division of property in plaintiff's favor. Defendant concludes that the "award [to] Plaintiff [of] 80% of the marital estate should be reversed and remanded for additional findings" and to take evidence based on the existing record. Plaintiff counters that the trial court expressly valued and considered these post-separation payments as a distributional factor in making an unequal distribution of 55% to 44% in defendant's favor.

We first note that defendant's arguments in favor of reversing and remanding the trial court's order are based on an incorrect calculation of the distribution of the marital estate. As determined above, the trial court's distribution of the marital estate was 55% to 44% in defendant's favor, not 80% to 20% in plaintiff's favor. Even so, we find no merit in defendant's arguments. As noted above, N.C. Gen. Stat. § 50-20(c) states that "If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. The court shall *consider* all of the following factors under this subsection[.]" (emphasis added). "Payment by one of the spouses, after the date of separation, on a marital home mortgage is a factor appropriately considered by the trial court pursuant

to N.C.G.S. § 50-20(c)(11a) and (12) (1987) in determining what division of marital property is equitable." *Miller v. Miller*, 97 N.C. App. 77, 80-81, 387 S.E.2d 181, 184 (1990).

Defendant essential contends that the trial court did not properly "consider" his contributions pursuant to factor N.C. Gen. Stat. § 50-20(c)(11a) because it did not assign a value to his payment of routine maintenance of their marital residence or list a total figure for his mortgage payments. However, the trial court's detailed findings show that it properly considered his mortgage payments in making its equitable distribution. Even though the trial court did not give a total figure for the mortgage payments in finding of fact 64, this is easily totaled as the trial court specifically found that defendant paid $2,000 per month from 1 November 2004 until 1 December 2005 and $1,883.19 per month from 1 January 2006 until 1 December 2009, amounting to around $114,500.00 in post-separation mortgage payments. The trial court specifically found that it had "considered those payments in Equitable Distribution." As for the routine maintenance of the marital residence, defendant cites no law to support his argument that the trial court was required, in its consideration of factor N.C. Gen. Stat. § 50-20(c)(11a), to include exact money values for payment of routine maintenance, including lawn care services, extermination services, natural gas bill, and utilities from the date of separation in October 2004 until the date of trial. The trial court also found that defendant had been living at least part-time in that residence during that period of time and from January 2006 forward defendant had lived full-time in the marital residence. The fact that defendant was living in the marital residence and thus benefitting personally from his maintenance of the home is also a proper consideration pursuant to factor N.C. Gen. Stat. § 50-20(c)(11a). *See Plummer v. Plummer*, 198 N.C. App. 538, 547, 680 S.E.2d 746, 752 (2009) (stating that factor N.C. Gen. Stat. § 50-20(c)(11a) "permits the trial court to consider plaintiff's maintenance of the property and retention of the benefits of the property[.]") It is clear from the findings that the trial court gave proper consideration of defendant's contributions to maintain and preserve the marital residence, pursuant to N.C. Gen. Stat. § 50-20(c)(11a). Accordingly, we find no abuse of discretion and defendant's argument is overruled.

## VI.  Valuation of Medical Practice

### A.  Evidence of value of practice

**[4]**  Lastly, defendant argues that the trial court erred "by adopting a false value of the defendant's interest in [his medical practice] and did not consider the tax consequences with respect to its valuation." Defendant argues that the trial court did not utilize any acceptable valuation methodology in coming to its valuation of his medical practice. Defendant argues that the trial court's findings are "based . . . upon factual inaccuracy and show how flawed this valuation and distribution was" as his expert witness Mark Snell offered no opinion with respect to the value of defendant's medical practice but merely gave pre-tax and after-tax estimates of the value of stock in the medical practice; Mr. Snell used no established valuation methodology but used a "rule of thumb" or "common sense" method to value the practice; and neither party obtained an expert to value the medical practice at the date of separation or date of distribution. Defendant also argues that the trial court failed to consider the "adverse tax consequences on Defendant's shares of stock" in the medical practice, even though his expert, Mr. Snell testified at length about the tax consequences of the income with respect to the liquidation of the stock. Defendant further contends that the trial court found that because of the closed nature of the medical practice any valuation should be discounted but did not make this discount in the order. Defendant concludes that "[u]nless the court can point to a non-taxable, liquid source of funds for the distributive award," he would be forced to pay the distributive award "using after-tax dollars to pay for a pre-tax valuation number." Plaintiff argues that any error in defendant's expert witness's valuation or valuation methodology amounts to invited error, as the parties had agreed in the pretrial order that the shares of defendant's medical practice should go to defendant, leaving only the issue of the value of the shares to be decided at trial, and the trial court adopted defendant's expert witness's reasoning, methodology, and valuation for the medical practice in its findings. Plaintiff argues that defendant's expert Mr. Snell used a reasonable methodology in calculating the approximate net value of the medical practice, by taking into account the collections over a two year period, averaging those by a factor of 50%, and dividing this by the number of outstanding shares to arrive at a per share price of $14,239; defendant held 23.056 shares at the time of separation and Mr. Snell determined they were valued at $328,294. Plaintiff lastly argues that the trial court was not required to take into account hypo-

**PELTZER v. PELTZER**

[222 N.C. App. 784 (2012)]

thetical tax consequences from the sale of the medical practice, as it found it unlikely that defendant was going to sell his shares in the medical practice.

We have recently stated that

> Invited error has been defined as "a legal error that is not a cause for complaint because the error occurred through the fault of the party now complaining." The evidentiary scholars have provided similar definitions; e.g., "the party who induces an error can't take advantage of it on appeal", or more colloquially, "you can't complain about a result you caused."
>
> 21 Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5039.2, at 841 (2d ed.2005) (footnotes omitted); *see also Frugard v. Pritchard*, 338 N.C. 508, 512, 450 S.E.2d 744, 746 (1994) ("A party may not complain of action which he induced." (citations omitted)).
>
> *Boykin v. Wilson Med. Ctr.*, 201 N.C. App. 559, 563, 686 S.E.2d 913, 916 (2009), *disc. review denied*, 363 N.C. 853, 694 S.E.2d 200 (2010).

*Romulus v. Romulus*, _____ N.C. App. _____, _____, 715 S.E.2d 308, 329 (2011). As noted by plaintiff, the parties in the pretrial order agreed that defendant's shares in the medical practice were to be distributed to defendant, but disagreed as to the value of this marital property. Therefore, the only issue as to defendant's medical practice at trial was the value. Defendant listed "Mark A. Snell, CPA" as an expert witness for the purpose of giving a value to the medical practice. Based upon the pretrial order and other orders entered prior to trial addressing valuation issues and expert witnesses who may be called at trial, defendant was well aware that his witness would be the only expert called to provide evidence as to valuation of his practice. At trial, defense counsel offered Mr. Snell as an expert in the valuation of medical practices, elicited during direct examination of Mr. Snell his determinations as to the value of defendant's medical practice, including the methodology he used in coming to this value, and offered into evidence documentation supporting this valuation.[2] By

---

2. We note that the only written findings regarding the valuation of the medical practice in the order are recitations of Mark Snell's testimony. *See In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 n.1 (1984) (stating that that "verbatim recitations of the testimony of each witness do not constitute findings of fact by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented."). As with the dis-

PELTZER v. PELTZER

[222 N.C. App. 784 (2012)]

calling Mr. Snell as his expert witness specifically to testify as to the valuation of the medical practice, any error in the trial court's reliance in its finding on Mr. Snell's valuation or methodology is invited error.

We also note that the burden of proof as to the valuation of the medical practice was upon defendant, to the extent that he seeks on appeal to challenge it. This Court has held that where a party failed to present evidence as to a value of an item of marital property, he cannot claim on appeal that the trial court erred by failing to assign a value to it. "The party claiming that property is marital property must also provide evidence by which that property is to be valued by the trial court." *Young v. Gum*, 185 N.C. App. 642, 647-48, 649 S.E.2d 469, 474 (2007) (citing *Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990)), *disc. review denied*, 362 N.C. 374, 662 S.E.2d 552 (2008). To the extent that there are any deficiencies in defendant's expert witness's evidence, this amounts only to defendant's failure to carry his burden of proof and not to reversible error. Accordingly, this argument is overruled.

B. Tax consequences of sale of medical practice

We next turn to address defendant's argument regarding the trial court's failure to account for the adverse tax consequences of selling his medical practice. N.C. Gen. Stat. § 50-20(c)(11) states that the trial court shall consider as a factor:

> The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor.

The trial court correctly followed the statute in making the appropriate considerations regarding the tax consequences and whether they were "reasonably likely to occur" in its findings. Specifically, the trial

---

tributional factors, the valuation of the medical practice is not so easy to find. The trial court's finding as to the actual date of separation value of defendant's medical practice, $328,294.00, is found only in the "Schedule A," which lists the values of marital property and is incorporated by reference into the equitable distribution order. A better practice would have been to make a clear finding of fact in the order stating the trial court's finding as to the valuation of the medical practice at $328,294.00 and how the court arrived at this value, as addressed in the next argument.

court found that "Mr. Snell has opined that the sell [sic] of [defendant's] shares in Newton Family Physicians, P.A. would have federal and state tax consequences, decreasing the Date of Separation value from $328,294.00 to $197,092.00." The trial court also found that it had considered

> the potential federal and state tax consequences should the Defendant's interest in Newton Family Physicians be sold or liquidated on the date of valuation; the Court finding that such tax consequences are unlikely given the Defendant's relative youth and his vested interest in continuing the protective and financially rewarding practice at Newton Family Physicians, although a discount is appropriate considering the unwritten, informal nature of the Newton Family Physician business.

This Court has further stated that the trial court is only required to consider the tax consequences pursuant to factor N.C. Gen. Stat. § 50-20(c)(11) that will result from the distribution the court actually orders, not speculative or hypothetical tax consequences. *Cochran v. Cochran*, 198 N.C. App. 224, 238, 679 S.E.2d 469, 478 (2009), *disc. review denied*, 363 N.C. 801, 690 S.E.2d 533 (2010); *Crowder v. Crowder*, 147 N.C. App. 677, 683, 556 S.E.2d 639, 643 (2001) (stating that the "[v]aluation of marital property may include tax consequences from the sale of an asset <u>only</u> when the sale is imminent and inevitable, rather than hypothetical or speculative." (emphasis in original)). Here, the trial court did not order defendant's medical practice to be sold to satisfy the distributive award. Also, as determined above, the distributive award could be covered by defendant's disposable income and the proceeds from the refinancing or sale of the marital residence. Therefore, the trial court found that it was unlikely that the practice would be sold. As the trial court was not required to make a finding regarding speculative or hypothetical tax consequences of the sale of defendant's medical practice, *see Cochran*, 198 N.C. App. at 238, 679 S.E.2d at 478, we find no abuse of discretion and defendant's argument is overruled.

C. Discount to value of medical practice

Defendant contends that the trial court found that because of the nature of his medical practice any valuation should be discounted but did not apply this discount in the order. Finding of fact 91 addresses this discount to the valuation of the practice and states, in pertinent part, as follows:

the Court finding that such tax consequences are unlikely given the Defendant's relative youth and his vested interest in continuing the protective and financially rewarding practice at Newton Family Physicians, although *a discount is appropriate considering the unwritten, informal nature of the Newton Family Physician business.*

(Emphasis added.) At trial, Mark Snell testified regarding the closely held nature of the medical practice; the informal nature of the shareholders' noncompete and consulting agreements which were considered in the valuation of the medical practice; and the basis for his valuation, which was 50% of the gross annual receipts because he thought that this was the best method for valuing medical practices such as defendant's medical practice. From these findings, it is unclear what "discount" the trial court applied to determine the value of the practice. Finding No. 91 implies that the trial court was considering the same "discount" that Mr. Snell applied in his valuation, as Mr. Snell considered the fact that the practice was closely held and informally organized, and he used 50% of the gross annual receipts and not some higher percentage as the basis for his valuation, but we cannot say for sure. The evidence is sufficient to support such a finding, but we are not at liberty to make it. As noted above, the findings regarding Mr. Snell's testimony are largely recitations of testimony and not actual findings of fact and the ultimate valuation of $328,294.00 is stated only in Exhibit A to the order. We cannot determine from the findings of fact what the "discount" the trial court found to be "appropriate" was or how it was calculated. It is possible also that the value as stated on Exhibit A incorporates this "discount," and if so, the trial court need only make additional findings which are sufficiently specific to permit meaningful appellate review of that valuation. Accordingly, we remand to the trial court for clarification of finding of fact 91 regarding the "discount" in the valuation of the medical practice.

Finally, defendant argues that "because of the multitude of errors in classification, valuation, and distribution committed by the trial court [he] is entitled to a new equitable distribution trial rather than a remand to correct the errors." As we have overruled all of defendant's arguments regarding the various errors he alleged, except for remanding for clarification of one of the trial court's findings of fact, defendant has not shown any basis for a new equitable distribution trial.

For the foregoing reasons, we affirm in part the trial court's equitable distribution order and remand for clarification of the trial court's finding of fact, as discussed above.

AFFIRMED in PART; REMANDED IN PART.

Judges CALABRIA and Judge McCULLOUGH concur.