IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-952

Filed 21 November 2023

Rowan County, No. 17 CVD 1308

MELANIE ANN EVANS, Plaintiff,

v.

RAY ALLEN MYERS, Defendant,

v.

ALLEN AND CHRISTINE MYERS, Intervenors.

Appeal by Plaintiff from order entered 19 May 2022 by Judge Charlie Brown in Rowan County District Court. Heard in the Court of Appeals 18 October 2023.

*Barton & Doomy Law Firm, PLLC, by Matthew J. Barton, for Plaintiff-Appellant.*

*No brief for Defendant.*

*Connell & Gelb PLLC, by Michelle D. Connell, for Intervenors-Appellees.*

COLLINS, Judge.

Plaintiff Melanie Evans appeals from the trial court's order granting Christine and Allen Myers legal and physical custody of her minor child and awarding her extremely limited visitation. Plaintiff argues that the trial court erred by awarding Intervenors custody of the minor child and by restricting Plaintiff's visitation to two days a year. The trial court did not err by awarding Intervenors custody of the minor

child because the findings of fact are supported by clear and convincing evidence and the findings of fact support the conclusions of law. However, the trial court erred by denying Plaintiff reasonable visitation absent a finding that Plaintiff is an unfit person to visit the child or that visitation with Plaintiff is not in the best interest of the child. Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I.  Background

Plaintiff Melanie Evans and Defendant Ray Myers were in a relationship from June 2009 until March 2017 but were never married.[1] The parties share one minor child, Callie,[2] who was born on 18 April 2013.

Plaintiff filed a complaint for child custody in January 2017. The trial court entered a consent order on 14 September 2017, which stated that "the parties are hereby granted joint legal and physical custody of the minor child . . . with the parties exercising week on, week off visitation," and that "[t]he parties shall enroll the minor child into Rowan-Salisbury Schools in the school closest to Plaintiff's home, unless otherwise agreed upon by the parties." Plaintiff filed a motion for a show cause order on 28 December 2018, alleging that Defendant failed to abide by the consent order because "the child is suppose to go to a Rowan school closest to Plaintiff but Plaintiff resides in Cabarrus County now & request the child be in that school district."

---

[1] Defendant is not a party to this appeal.
[2] We use a pseudonym to protect the identity of the minor child.

Christine and Allen Myers ("Intervenors"), who are the paternal grandparents of Callie, filed a motion to intervene and modify custody, alleging that there had been a substantial change of circumstances since the entry of the consent order, and that "it would be in the best interest of the minor child to award both temporary and permanent sole legal custody and primary physical custody of the minor child to the Intervenors and secondary physical custody, with appropriate visitation to the Plaintiff & Defendant." Intervenors specifically alleged that "[w]hen the Plaintiff-mother has custody of the minor child, the child is not transported to school in Rowan County and thereby misses school every other week"; that "Plaintiff and Defendant have been served with truancy papers related to the child's repeated and extended absences from school"; and that "[t]he minor child has expressed fear and 'hate' for her mother, and has exhibited symptoms consistent with emotional distress, including screaming 'don't hit me' in the middle of the night, wetting her pants, and worrying about not getting enough to eat at her mothers."

After a bench trial on 21 May 2019, the trial court entered a custody order on 13 June 2019, ordering that:

> 1. Intervenors, Allen and Christine Myers, shall have legal and physical custody of the minor child . . . .
>
> 2. Defendant shall have visitation with the minor child as mutually agreed and as follows:
>
>> a. Up to two consecutive weeks at the close of school for the summer with thirty days prior written notice to Intervenors of the two weeks Defendant wants to exercise his visitation; and

b. After the child has spent two consecutive weeks during the summer with Intervenors following Defendant's first two consecutive week period, Defendant shall have the child for up to fourteen days (two weeks) after Intervenors two weeks in the summer as long as it does not conflict with the resumption of school for the minor child.

3. Plaintiff shall have visitation with the minor child the first weekend of Defendant's first two-week period of visitation during the summer. Plaintiff's weekend shall be from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

Plaintiff and Defendant appealed. On appeal, this Court held that "the grandparents alleged sufficient facts to confer standing to seek custody[,]" but that "the trial court's findings of fact are insufficient to support the court's conclusion that the parents forfeited their constitutionally protected status as parents." *Evans v. Myers*, 281 N.C. App. 627, 867 S.E.2d 424 (2022) (unpublished). Accordingly, this Court vacated the trial court's order and remanded to the trial court to "enter a new order on the existing record or conduct any further proceedings the court deems necessary in the interests of justice." *Id.* The trial court on remand entered a new order on the existing record with additional findings of fact but left the custody award and visitation schedule unchanged. Plaintiff appealed.

## II.    Discussion

### A.  Custody Award

Plaintiff argues that the trial court erred by awarding Intervenors legal and physical custody of Callie because the findings of fact are not supported by clear and convincing evidence, and the findings of fact do not support the conclusions of law.

"A parent has an interest in the companionship, custody, care, and control of his or her children that is protected by the United States Constitution." *Best v. Gallup*, 215 N.C. App. 483, 485, 715 S.E.2d 597, 599 (2011). "A parent loses this paramount interest if he or she is found to be unfit or acts inconsistently with his or her constitutionally protected status." *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 503 (2010) (quotation marks and citation omitted). "[T]here is no bright line beyond which a parent's conduct meets this standard." *Id.* (citation omitted). The analysis of whether a biological parent's conduct is inconsistent with the parent's protected status is a "fact-sensitive inquiry" and such a determination must be made on a case-by-case basis. *Id.* at 550, 704 S.E.2d at 503.

"[A] trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citation omitted). "In a custody proceeding, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003) (citations omitted). Unchallenged findings of fact are binding on appeal. *Peters v. Pennington*, 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011). We review the trial court's conclusions of law de novo. *Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008).

### 1. **Findings of Fact**

Plaintiff specifically challenges findings of fact 18, 23, 24, 26, 37, 39, 40, 46, 47,

58, 60, 63, 64, 84, and 85. We address each finding in turn.

#### a. *Findings of Fact 18, 23, 24, 26, 37, 39, 40*

> 18. On or about October 26, 2018, Defendant-Father informed Plaintiff-Mother of the child's enrollment [at Morgan Elementary School in Rowan County].
>
> . . . .
>
> 23. Plaintiff-Mother had access to another vehicle during the relevant time period that the child was absent and tardy while in her care.
>
> 24. Plaintiff-Mother continued to travel to and from her work at Amazon during the relevant time period that the child was absent and tardy while in her care. In particular, Plaintiff-Mother generally began work at 7:00 a.m. and would have lost two hours of work to transport the child to and from school.
>
> . . . .
>
> 26. Plaintiff-Mother had the ability and means to take the child to school during the relevant time period that the child was absent and tardy while in her care but willfully elected not to do so.
>
> . . . .
>
> 37. Defendant-Father's election to take no action on the large number of absences and tardies was a substantial factor to the decline of the child's academic performance.
>
> . . . .
>
> 39. Plaintiff-Mother and Defendant-Father each failed to exercise reasonable and appropriate measures to ensure the child's regular attendance in school.
>
> 40. The large number of absences and tardies was a substantial factor in the decline of the child's academic performance. In particular, the child was required to play

catch-up in her studies due to the same.

Finding of fact 18 is supported by Defendant's testimony that he informed Plaintiff "the day of" that he enrolled Callie in school, which was 26 October 2018. Furthermore, finding of fact 23 is supported by Defendant's testimony that "[Plaintiff] had access to a vehicle[,]" and by Plaintiff's testimony that she has had a vehicle "since February." Finding of fact 24 is supported by Defendant's testimony that "[Plaintiff] had access to a vehicle[,]" and by Plaintiff's testimony that she has had a vehicle "since February" and that "[she] ha[s] to be at work by 7:00, and it's really difficult to change [her] schedule at Amazon, and -- so [she] lose[s] two hours of work to accommodate for [Callie] to get there on time." Finding of fact 26 is supported by the same testimony and is further supported by the following testimony:

> [DEFENSE COUNSEL]: And since you discovered she was enrolled in school in November, do you know how many absences she's had from that date until the present?
>
> [PLAINTIFF]: Well, we do it every other week. Oh, boy. At least 20 days.
>
> [DEFENSE COUNSEL]: So it's -- it's fair to say that on the weeks that you have [Callie], you don't take her to school?
>
> [PLAINTIFF]: No, because he was in contempt of court.
>
> [DEFENSE COUNSEL]: That's --
>
> [PLAINTIFF]: Our papers --
>
> [DEFENSE COUNSEL] -- "no," you didn't take her to school?
>
> [PLAINTIFF]: I know.
>
> [DEFENSE COUNSEL]: -- is that the answer? Okay.

> [PLAINTIFF]: Because our papers that he signed said that our -- he was in contempt of court because she is supposed to be enrolled in a school closest to me, not him.

Finding of fact 37 is supported by Callie's paternal grandmother's testimony:

> [INTERVENORS' COUNSEL]: Are you concerned about the fact that [Defendant] did nothing to make sure that the child went to school even on [Plaintiff's] time? Are you concerned about that?
>
> [CHRISTINE MYERS]: Well I'm concerned that [Defendant] didn't step in and immediately -- I don't know what the legal recourse would be. File for full custody. I -- I said to him, time and again, "Ray, what are you waiting for? This can't go on, you know, please do something." And I don't know what the hesitation was, but I wish he had immediately acted upon that.

Finding of fact 39 is supported by Defendant's testimony that "[Plaintiff] had access to a vehicle"; by Plaintiff's testimony that she has had a vehicle "since February" and that she did not take Callie to school because "[she] ha[s] to be at work by 7:00, and it's really difficult to change [her] schedule at Amazon, and -- so [she] lose[s] two hours of work to accommodate for [Callie] to get there on time"; and by Callie's paternal grandmother's testimony that "[Defendant] didn't step in" to make sure that Callie went to school when she was with Plaintiff. Finally, finding of fact 40 is supported by Callie's paternal grandmother's testimony that "[Callie's] missed so much school. I'm sure she's missing, you know, valuable teaching time; and it's broken up, so she's there for a week, and then she misses the next week, so she's behind and has to catch up."

Accordingly, findings of fact 18, 23, 24, 26, 37, 39, and 40 are supported by clear

and convincing evidence.

### b. *Findings of Fact 46, 47, 58, 60*

> 46.  At the time of the hearing, Plaintiff-Mother willfully elected to not provide bedding for the child's bed or a pillow case for her pillow without justification.
>
> 47.  The child asked Intervenor-Step-Grandmother what bedding was after seeing the same on the child's bed when staying with Intervenors.  The home conditions of Plaintiff-Mother and Defendant-Father are unsafe and unsuitable for the child's age, amounting to unfitness and causing substantial harm to the child.
>
> . . . .
>
> 58.  On October 1, 2018, Plaintiff-Mother willfully elected to transport the child to play at a park at night, a known risk for injury or other danger.  Intervenors' Exhibit No. 17 is incorporated herein by reference as if fully set forth.
>
> . . . .
>
> 60.  However, in December 2018, Plaintiff-Mother had access to snow boots for the child which had been gifted by Intervenors but willfully elected not to have her wear them.

Findings of fact 46 and 47 are supported by Plaintiff's Facebook post showing Callie lying in a bed without sheets or a pillowcase, and by Callie's paternal grandmother's testimony that "when [Callie] was with [her], and [she] pulled the top sheet over [Callie] and she was like, what's this.  This is a sheet, honey."  Furthermore, finding of fact 58 is supported by Plaintiff's Facebook post showing her, Callie, and another child sitting in a car at night with the caption, "[T]he kids wanted to go to park at this time of night before bed so I took them we got there they started thinking how hard to play in the dark[.]"  Finally, finding of fact 60 is supported by Plaintiff's

Facebook post showing Callie playing in the snow with bags on her feet and Callie's paternal grandmother's testimony that Intervenors bought Callie winter boots.

Accordingly, findings of fact 46, 47, 58, and 60 are supported by clear and convincing evidence.

c.  *Findings of Fact 63, 64, 84, 85*

> 63.  The child has expressed to others that she hates and does not want to be with Plaintiff-Mother.
>
> 64.  [Plaintiff]-Mother's actions and inactions described herein were contributing factors for the child's expression to others.
>
> . . . .
>
> 84.  Cumulatively, the conduct of Plaintiff-Mother and Defendant-Father demonstrated that the child (1) did not receive proper care and support and (2) was exposed to substantial risks of harm.
>
> 85.  Additionally, the actions and inactions of Plaintiff-Mother and Defendant-Father, viewed cumulatively, and their past misconduct detrimentally impacted the present (as of the original hearing) and could impact the future of the child. Among other considerations, the academic performance and substantial risk of harm of the child all detrimentally impacted the child and could do so in the future.

Findings of fact 63 and 64 are supported by Callie's paternal grandmother's testimony that "[Defendant] has said [Callie] hates her mother. And that way didn't want to -- and that she didn't want to go with her mother." Finally, findings of fact 84 and 85 are supported by the same clear and convincing evidence that supported the above findings of fact.

Accordingly, the trial court's findings of fact are supported by clear and convincing evidence.

## 2. *Conclusions of Law*

Plaintiff argues that the findings of fact do not support the trial court's conclusion of law that she acted inconsistently with her constitutionally protected parental status.

In addition to the supported findings detailed above, the trial court made the following relevant and unchallenged findings:

> 19. From on or about October 26, 2018, through May 21, 2019, the child was enrolled at Morgan Elementary School.
>
> 20. Since the child's enrollment, she has been absent thirty-six (36) days and received thirteen (13) tardies.
>
> 21. The majority of the child's absences occurred while the child was in Plaintiff-Mother's custody.
>
> . . . .
>
> 28. Plaintiff-Mother willfully elected to not take the child to school during the relevant time period because she believed Defendant-Father had violated the then-controlling Order.
>
> . . . .
>
> 30. At the time of the original hearing, Plaintiff-Mother [and] Defendant-Father had pending charges in Rowan County for School Attendance Law Violations relating to the child's large number of absences.
>
> . . . .
>
> 33. The child began school at Morgan Elementary in the second quarter of the 2018-2019 school year.
>
> 34. The child's grades continued to decline throughout that school year.

. . . .

61. [Plaintiff]-Mother had a history of screaming [at] the child rather than utilizing appropriate punishment methods.

The findings of fact support the trial court's conclusions of law that:

6. By clear, cogent, and convincing evidence, Plaintiff-Mother and Defendant-Father are unfit to have care, custody, and control of the child.

7. By clear, cogent, and convincing evidence, Plaintiff-Mother and Defendant-Father have exhibited parental behavior inconsistent with the parental duties and responsibilities regarding the care of the child, waiving their constitutionally protected status and warranting placement of the child with Intervenors.

8. It is in the best interest and welfare of the child for her custody to be placed with Intervenors.

Accordingly, the trial court did not err by awarding Intervenors legal and physical custody of Callie.

**B. Visitation Schedule**

Plaintiff argues that the trial court abused its discretion by "restrict[ing] [Plaintiff] to a conscience shocking two days a year of visitation."

"A noncustodial parent's right of visitation is a natural and legal right which should not be denied unless the parent has by conduct forfeited the right or unless the exercise of the right would be detrimental to the best interest and welfare of the child." *Paynich v. Vestal*, 269 N.C. App. 275, 278, 837 S.E.2d 433, 436 (2020) (quotation marks and citations omitted). "In awarding visitation privileges[,] . . . the best interest and welfare of the child is the paramount consideration." *Id.* (quotation

marks and citation omitted). In determining matters involving a parent's visitation rights, the trial court is granted "wide discretionary power." *Swicegood v. Swicegood*, 270 N.C. 278, 282, 154 S.E.2d 324, 327 (1967). "However, a trial court's discretionary authority is not unfettered." *Paynich*, 269 N.C. App. at 278, 837 S.E.2d at 436 (quotation marks and citation omitted). N.C. Gen. Stat. § 50-13.5(i) provides:

> In any case in which an award of child custody is made in a district court, the trial judge, prior to denying a parent the right of reasonable visitation, shall make a written finding of fact that the parent being denied visitation rights is an unfit person to visit the child or that such visitation rights are not in the best interest of the child.

N.C. Gen. Stat. § 50-13.5(i) (2021). "The statutory language is straightforward and unambiguous and requires that if a trial court does not grant reasonable visitation to a parent, its order must include a finding *either* that the parent is 'an unfit person to visit the child' *or* that visitation with the parent is 'not in the best interest of the child.'" *Respess v. Respess*, 232 N.C. App. 611, 616, 754 S.E.2d 691, 696 (2014). Where visitation is severely restricted, there must be some finding of fact, supported by competent evidence in the record, warranting such restriction. *Johnson v. Johnson*, 45 N.C. App. 644, 647, 263 S.E.2d 822, 824 (1980).

Here, the trial court's order provides, "Plaintiff-Mother shall have visitation with the child the first weekend of Defendant-Father's first two-week period of visitation during the summer. Plaintiff-Mother's weekend shall be from Friday at 6:00 p.m. until Sunday at 6:00 p.m." The trial court denied Plaintiff the right of

reasonable visitation by restricting her visitation to two days a year absent a finding that she was "an unfit person to visit the child or that such visitation rights are not in the best interest of the child." N.C. Gen. Stat. § 50-13.5(i). Accordingly, we reverse in part and remand to the trial court.

### III.    Conclusion

We affirm the portion of the trial court's order awarding Intervenors custody of Callie because the findings of fact are supported by clear and convincing evidence, and the findings of fact support the conclusions of law. However, the trial court erred by denying Plaintiff reasonable visitation absent a finding that Plaintiff is an unfit person to visit the child or that visitation with Plaintiff is not in the best interest of the child. We therefore reverse in part and remand to the trial court for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges GORE and FLOOD concur.