IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-733

 Filed: 7 July 2020

Buncombe County, No. 17 CVD 4584

SHELLEY GOULAS STOWE, Plaintiff,

 v.

RAYMOND LEE STOWE, Defendant.

 Appeal by defendant from judgment and order entered 29 January 2019 by

Judge Andrea F. Dray in Buncombe County District Court. Heard in the Court of

Appeals 15 April 2020.

 Emily Sutton Dezio for plaintiff-appellee.

 Fox Rothschild LLP, by Michelle D. Connell, for defendant-appellant.

 TYSON, Judge.

 Raymond Lee Stowe (“Defendant”) appeals from an equitable distribution

judgment and order entered 29 January 2019. We affirm in part, reverse in part, and

remand.

 I. Background

 Shelley Goulas Stowe (“Plaintiff”) and Defendant were married on 5 October

1996 and separated on 11 September 2017. Two minor children were born of the

marriage. The trial court entered a consent order for child custody and child support
 STOWE V. STOWE

 Opinion of the Court

on 22 June 2018. The consent order for child custody and child support is not a part

of this appeal.

 Defendant owned an Allstate Corporation captive insurance agency, which

sold only Allstate insurance products. Both Plaintiff and Defendant felt that owning

an independent insurance agency, rather than a captive agency, would better fit the

family’s needs. They purchased Madison Insurance Group, Inc. (“Madison”), an

independent insurance agency, during the marriage. Madison is a North Carolina

sub-S corporation. Madison sells policies issued by approximately thirty different

vendors, but Allstate is the primary vendor, accounting for nearly one-third of the

policies written.

 The parties’ equitable distribution trial, centered primarily on the value of

Madison, began on 29 November 2018. Plaintiff engaged F. Foster Shriner as an

expert witness to express an opinion of value of Madison. Plaintiff presented two

letters to Plaintiff’s attorney from Shriner, one dated 25 July 2018 and one dated 28

November 2018. Shriner’s 25 July 2018 letter valued Madison at $531,435, while his

later 28 November 2018 letter valued Madison at $511,212.

 Both letters provided a “conclusion of value” of Madison, but stated that the

records he relied upon were “incomplete, at best.” The 25 July 2018 letter contained

two additional documents: Madison’s Form 1120S, a U.S. Corporation Income Tax

Return for an S Corporation, from 2016 and a balance sheet dated 11 September 2017.

 -2-
 STOWE V. STOWE

 Opinion of the Court

 The 25 July 2018 letter contained the following asset values: $25,987 in cash,

$26,100 for a note receivable, and $532,958 for goodwill/intangibles against liabilities

of $53,610 for a note payable. The $532,958 for goodwill/intangibles estimate was

calculated by multiplying the Madison 2016 revenues of $217,534 by a value of 2.45.

The total estimated value of Madison was $531,435.

 The 2.45 multiplier Shriner used to calculate estimated value was contained

in an article sent by Plaintiff and Plaintiff’s father to Shriner, entitled “First Quarter

2018 Allstate Agency Value Index.” The article was found on PPC Loan’s website, a

lending company for Allstate Insurance agencies, and was written by its president

and Chief Executive Officer, Paul Clarke. The article included a chart detailing

“Allstate Agency Price to New/Renewal Commission Ratio (National Average)” for the

fourth quarter of 2016, all of 2017, and the first quarter of 2018.

 Shriner’s 28 November 2018 letter reflected assets of: $24,790 in cash, $30,140

in a note receivable, and $532,958 in goodwill/intangibles against liabilities of

$76,676 for a note payable. The total estimate of value was $511,212. The

goodwill/intangibles were calculated using the same revenues and the 2.45 multiple

as the 25 July 2018 letter. Nowhere in the letters or sheets is there a reference or

certification the opinion was prepared according to Generally Accepted Accounting

Principles (“GAAP”) or disclaimer.

 -3-
 STOWE V. STOWE

 Opinion of the Court

 At the equitable distribution trial, Shriner was tendered as an expert witness

in business valuation, forensic accounting, and certified public accounting. Shriner

explained his methodology behind the income-based approach he used to calculate

Madison’s value, as well as his assigned 2.45 revenue multiplier. Shriner based his

valuation on four factors: cash assets verified by Quickbooks software, a note

receivable, a loan taken by Madison, and goodwill. Shriner had the 2017 tax returns,

most of the bank statements, and a summary book, but not a balance sheet.

 On cross-examination, Shriner testified he understood the difference between

a captive Allstate agency and an independent agency. Shriner defended his 2.45

value multiplier from the “Allstate Agency Price to New/Renewal Commission Ratio

(National Average)” chart, because “[i]t was a document that stated what the market

rates were in terms of the revenue multiple.”

 Shriner further acknowledged the chart’s valuation was based, in part, on an

agency that sold as a part of a group merger, and the chart included only captive

Allstate agency sales transactions. Shriner acknowledged Allstate captive agencies

have a buy-back provision that an independent agency does not have, which would

factor positively into the valuation.

 Defendant’s counsel provided Shriner with another article, also written by

Paul Clarke and PPC Loan, entitled “Allstate Agencies - Why so Valuable?” The

article states Allstate captive agencies are very unique, as compared to their peers in

 -4-
 STOWE V. STOWE

 Opinion of the Court

other service sector industries, because Allstate-only agencies have resources

available to them that independent agencies do not have. The article provides a chart

illustrating Allstate captive agencies having a superior multiple, in value, as

compared to independent agencies. Clarke and PPC Loan valued Allstate captive

agencies at 2.5 times the annual commissions and valued independent agencies at

1.5 times the annual commissions.

 Defendant tendered Tom Franks, as an expert witness in certified public

accounting, business valuation, and forensic accounting. Franks testified he had

significant experience in the insurance business and had owned an independent

insurance agency for ten years, from 1978 through 1988. The trial court admitted

Franks as an expert witness only in certified public accounting. The court found he

had “minimal business valuation experience, had maintained minimal continuing

education in business valuation methodologies, and had not prepared more than two

business valuations for insurance agencies.”

 The trial court entered an equitable distribution order valuing Madison by

using Shriner’s 28 November 2018 letter’s valuation amount of $511,212, less a

preliminary distribution to Plaintiff of $21,003.45, giving Madison a net value of

$490,208.55. Tax consequences of a sale were not factored into the value of Madison.

 The equitable distribution order also distributed IRA and 401(k) accounts. The

trial court found a 10% penalty would accrue if the accounts were immediately

 -5-
 STOWE V. STOWE

 Opinion of the Court

withdrawn. The trial court also found there would be a taxable event creating tax

consequences when the money was withdrawn, and reduced the value of the

American Traditional IRA from $138,847.65 to 104,135.74, the Lumina Wealth IRA

from $20,601 to $15,450.75, and the Principal 401(k) from $28,362 to $21,271.50 to

account for those consequences. Defendant appeals.

 II. Jurisdiction

 This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and

50-19.1 (2019).

 III. Issues

 Defendant argues the trial court erred by: (1) failing to reasonably approximate

the value of Madison by basing the valuation on incompetent evidence; (2) refusing

to qualify Franks as an expert witness in the field of business valuation; (3)

calculating early withdrawal penalties for retirement accounts, but not calculating

imbedded taxes for Madison; and, (4) distributing payments on a note payable to

Madison to Plaintiff where Madison is not a party to this suit.

 IV. Valuation of Madison

 Defendant asserts the trial court’s findings did not reasonably approximate the

value of Madison and made erroneous conclusions of valuation upon incompetent

evidence.

 A. Standard of Review

 -6-
 STOWE V. STOWE

 Opinion of the Court

 [T]he standard of review on appeal from a judgment
 entered after a non-jury trial is whether there is competent
 evidence to support the trial court's findings of fact and
 whether the findings support the conclusions of law and
 ensuing judgment. The trial court’s findings of fact are
 binding on appeal as long as competent evidence supports
 them, despite the existence of evidence to the contrary.

 The trial court’s findings need only be supported by
 substantial evidence to be binding on appeal. We have
 defined substantial evidence as such relevant evidence as
 a reasonable mind might accept as adequate to support a
 conclusion. As to the actual distribution ordered by the
 trial court, when reviewing an equitable distribution order,
 the standard of review is limited to a determination of
 whether there was a clear abuse of discretion. A trial court
 may be reversed for abuse of discretion only upon a
 showing that its actions are manifestly unsupported by
 reason.

Peltzer v. Peltzer, 222 N.C. App. 784, 786-87, 732 S.E.2d 357, 359-60 (2012)

(citations, quotation marks, and brackets omitted).

 “The task of a reviewing court on appeal is to determine whether the approach

used by the trial court reasonably approximated the net value of the partnership

interest. If it does, the valuation will not be disturbed.” Poore v. Poore, 75 N.C. App.

414, 419, 331 S.E.2d 266, 270 (1985) (citation omitted).

 The holding in Poore has been applied to closely-held corporations. Patton v.

Patton, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (“the trial court should make

specific findings regarding the value of a spouse’s professional practice and the

existence and value of its goodwill, and should clearly indicate the evidence on which

 -7-
 STOWE V. STOWE

 Opinion of the Court

its valuations are based, preferably noting the valuation method or methods on which

it relied.”(citation and quotation marks omitted)).

 B. Analysis

 The equitable distribution order states, in relevant parts:

 33. The Court received testimony from the parties and
 expert witnesses regarding the business entity known as
 Madison Insurance Group, Inc. Based upon the credible
 evidence received, the Court makes the following specific
 findings of fact regarding this asset:

 a. The parties acquired the foregoing business during
 the course of the marriage and prior to the date of
 separation; at the time the parties acquired the
 business, they purchased the business using a
 multiplier of two times the gross revenue of the
 business in order to determine the value of the entity.
 The parties borrowed money from the marital
 residence in order to fund this purchase; that following
 the purchase of the business and until the date of
 separation, the business paid the mortgage associated
 with the residence, and the parties considered the debt
 secured by the residence and associated with the
 purchase of the business to be a business liability.

 b. Madison Insurance Group, Inc. is an insurance
 agency with its primary operating location in Madison
 County, North Carolina. Since the purchase of the
 business and through the present date, the Husband
 has operated this business.

 c. The Husband made an additional purchase of
 another agency in the Buncombe County, North
 Carolina, and folded this business into Madison
 Insurance Group, Inc. This location has been operated
 under the business name of Madison Insurance Group,

 -8-
 STOWE V. STOWE

 Opinion of the Court

Inc. since it was acquired by the parties and continues
to operate at the present time.

d. The business maintains certain assets, including
tangible personal property, intangible accounts,
accounts receivable, renewable contracts, and
liabilities including but not limited to loans and credit
card debt.

e. The business is an independent agency and sells
policies backed by approximately 30 different vendors.
The primary vendor, accounting for approximately one
third of the policies written, is Allstate insurance.

f. The Husband testified and the Court finds credible
on this particular issue, that the parties purchased
Madison Insurance Group, Inc. in order to have an
insurance agency operated by the parties which was
not a captive Allstate agency. At the time the parties
purchased Madison Insurance Group, Inc., the
Husband owned a captive Allstate agency. It was the
intention of the parties to acquire Madison Insurance
Group, Inc. in order to generate greater revenue and to
have access to different products and vendors.

g. The Husband testified as to his belief regarding the
value of this business. The Husband testified that he
believed the business value to be nominal, based upon
his belief that the business entity has operated at a loss
for years. The Court does not find this testimony to be
competent nor does it find the testimony to be credible.
Regarding the issue of competency, the Husband was
not qualified as an expert in business valuations and
did not provide any business valuation methodology
appropriate for determining the fair market value of
the business. Furthermore, regarding credibility, the
Court finds that the Husband executed a personal
financial statement on 22 June 2017, approximately
three months prior to the separation parties (sic),
where he listed the business as having a value of

 -9-
 STOWE V. STOWE

 Opinion of the Court

$400,000 or approximately two times the gross revenue
of the business.

...

i. The Wife tendered an expert witness, Mr. Foster
Shriner, for the purpose of determining a business
value for Madison Insurance Group, Inc. Mr. Shriner
was tendered as an expert witness in certified public
accounting, forensic accounting, and business
valuations. The Court accepted Mr. Shriner as an
expert witness in all three areas, and found the witness
to be competent to testify, and found the testimony of
the witness to be credible and of assistance to the Court
in determining the fair market value of the business.
Pursuant to the testimony of Mr. Shriner, the Court
makes the following specific findings regarding
Madison Insurance Group, Inc.:

 1. That industry standard for valuing an insurance
 agency considers the use of a multiplier of the gross
 sales of the business; that depending on the type,
 size and volume of the agency, a multiplier of 2 to
 5 times gross sales would be appropriate;

 2. That Madison Insurance Group, Inc. is not a
 captive agency, however, the majority of all policies
 written from any individual vendor are Allstate
 Insurance policies; that Allstate policies account
 for approximately one-third of the sales for
 Madison Insurance Group, Inc.

 3. That Madison Insurance Group, Inc. at the time
 of separation maintained certain cash accounts,
 accounts receivable, had outstanding loans paid to
 third parties (specifically Andy Stowe, brother of
 the Husband), and had certain goodwill; that
 furthermore, the business maintained certain
 debts, including certain liabilities due to a lending
 institution known as Oak Funding.

 - 10 -
 STOWE V. STOWE

 Opinion of the Court

4. That in considering the appropriate multiplier to
determine the goodwill value of the business, Mr.
Shriner considered the industry standards, and
also considered multipliers used by Allstate
Insurance in valuing agencies considering the size,
volume and sales. Mr. Shriner further interviewed
professionals in the industry to determine
appropriate multipliers. Based upon all sources
and consideration, and consistent with industry
standard, Mr. Shriner applied a multiplier of 2.45
times gross sales to determine the goodwill of the
business. The Court finds this to be reasonable and
credible.

5. Mr. Shriner determined the business to have the
following assets and liabilities:

 Cash assets, net of funds held in trust: $24,790
 Notes receivable from A. Stowe: $30,140
 Goodwill and intangibles 2.45 x gross
 sales of $217,534: $532,958
 Note payable to Oak Funding: [$](76,676)
 Madison Insurance Group, Inc. FMV $511,212

6. That at the time that Mr. Shriner completed his
evaluation he had requested but had not received
2018 taxes or business information to update his
analysis. This information was provided
approximately three days prior to the hearing. Mr.
Shriner testified that, upon review of the gross
sales, the business value would have increased, but
only slightly and not in any significant amount.
The Court finds it credible that this value is the
value of the business as of the date of separation,
and on the date of the hearing.

...

 - 11 -
 STOWE V. STOWE

 Opinion of the Court

 8. In considering the credible testimony of Mr.
 Shriner, the Court finds Madison Insurance Group,
 Inc. to have a fair market value of $511,212 less the
 preliminary distribution received by the Wife . . . ,
 in the amount of $21,003.45 with a resulting net
 value of $490,208.55.

(brackets and alterations omitted).

 Defendant argues the trial court erred in its valuation of Madison by basing

its valuation on incompetent evidence, by utilizing an improper valuation

methodology, which did not approximate the market value of the agency and goodwill,

and by double-counting revenue in the calculation.

 1. Competent Evidence

 The trial court accepted Shriner’s opinion of valuation of Madison, expressed

in his 28 November 2018 letter. During the equitable distribution trial, Shriner

testified towards the basis of this valuation. A critical part of the evidence was Paul

Clarke’s article from his company’s website entitled “First Quarter 2018 Allstate

Agency Value Index,” and the included chart: “Allstate Agency Price to New/Renewal

Commission Ratio (National Average)” for the fourth quarter 2016, all of 2017, and

the first quarter of 2018.

 Absent from the record or transcript is Paul Clarke’ background or

qualifications to assert an opinion of value. This is a distinction Shriner

acknowledged during cross examination and in the record, but is not addressed or

rectified by either Shriner or the trial court in the equitable distribution order.

 - 12 -
 STOWE V. STOWE

 Opinion of the Court

 Paul Clarke and PPC Loan only financed Allstate captive agencies, not

independent agencies like Madison. Shriner relied upon the chart, providing the

value of only captive Allstate agencies, to base his opinion. Included in the sample

data was an Allstate agency sold as a part of a group merger. The trial court

concluded “that Allstate policies account for approximately one-third of the sales of

Madison Insurance Group, Inc.” However, this conclusion failed to consider and

reconcile resources and advantages that a captive Allstate agency has, such as a buy-

back provision for a prospective seller and other resources to justify and warrant the

higher revenue multiples over that applied to independent insurance agencies.

 Paul Clarke’s other article, “Allstate Agencies - Why so Valuable?”, recognizes

the resources and advantages to justify the high multiple of 2.5 for all Allstate captive

agencies. The article also valued independent agencies at a multiple of 1.5 times the

commissions. Plaintiff argues Defendant’s own valuation of Madison at a 2.0

multiplier of sales supports the 2.45 finding to arrive at the value.

 The trial court found Defendant’s testimony of valuation of Madison not to be

credible, due in part to his not being tendered or accepted as a business valuation

expert, yet it references this application and value in its order. A business or property

owner is competent to testify to the value of his business or property. Hill v. Hill, 244

N.C. App. 219, 229, 781 S.E.2d 29, 37 (2015) (“[L]ay opinions as to the value of the

property are admissible if the witness can show that he has knowledge of the property

 - 13 -
 STOWE V. STOWE

 Opinion of the Court

and some basis for his opinion. Unless it affirmatively appears that the owner does

not know the market value of his property, it is generally held that he is competent

to testify as to its value.”). The weight given to that testimony is for the finder of fact

to determine. Phelps v. Phelps, 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) (“[T]he

trial judge, sitting without a jury, has discretion as finder of fact with respect to the

weight and credibility that attaches to the evidence.”). The evidence and findings do

not support the trial court’s conclusion on valuation.

 2. Valuation Methodology

 The Internal Revenue Service (“IRS”) provides the following factors to value

the stock of a closely-held corporation:

 SEC. 4. FACTORS TO CONSIDER.
 .01 It is advisable to emphasize that in the valuation of the
 stock of closely held corporations or the stock of
 corporations where market quotations are either lacking or
 too scarce to be recognized, all available financial data, as
 well as all relevant factors affecting the fair market value,
 should be considered. The following factors, although not
 all-inclusive are fundamental and require careful analysis
 in each case:

 (a) The nature of the business and the history of the
 enterprise from its inception.

 (b) The economic outlook in general and the condition and
 outlook of the specific industry in particular.

 (c )The book value of the stock and the financial condition
 of the business.

 (d) The earning capacity of the company.

 - 14 -
 STOWE V. STOWE

 Opinion of the Court

 (e) The dividend-paying capacity.

 (f) Whether or not the enterprise has goodwill or other
 intangible value.

 (g) Sales of the stock and the size of the block of stock to be
 valued.

 (h) The market price of stocks of corporations engaged in
 the same or a similar line of business having their stocks
 actively traded in a free and open market, either on an
 exchange or over-the-counter.

Rev. Rul. 59-60, 1959-1 C.B. 237 (January 1, 1959) (emphasis supplied).

 This Court’s precedents provide further guidance on valuation. Specifically, a

trial court should consider: “(a) its fixed assets including cash, furniture, equipment,

and other supplies; (b) its other assets including accounts receivable and the value of

work in progress; (c) its goodwill, if any; and (d) its liabilities.” Poore, 75 N.C. App. at

419, 331 S.E.2d at 270 (citations omitted); Goodwill, Black’s Law Dictionary (11th ed.

2019) (“A business’s reputation, patronage, and other intangible assets that are

considered when appraising the business, . . . the ability to earn income in excess of

the income that would be expected from the business viewed as a mere collection of

assets.”).

 However, this Court in Poore cautioned trial courts “to value goodwill with

great care, for the individual practitioner will be forced to pay the ex-spouse tangible

dollars for an intangible asset at a value concededly arrived at on the basis of some

 - 15 -
 STOWE V. STOWE

 Opinion of the Court

uncertain elements.” Poore, 75 N.C. App. at 421, 331 S.E.2d at 271 (citation and

quotation marks omitted).

 As noted above, when valuing goodwill of a closely-held business, several

factors should be examined: “the age, health, and professional reputation of the

practitioner, the nature of the practice, the length of time the practice has been in

existence, its past profits, its comparative professional success, and the value of its

other assets.” Id. (citations omitted).

 Here, the trial court found accounts of cash assets verified by Quickbooks

software and a note receivable. The trial court further found the intangible goodwill

asset and computed a liability balance of the loan taken by Madison. The trial court’s

designation was based upon Shriner’s findings, where he had the 2017 tax returns,

most of the bank statements, and a summary book but not a balance sheet.

 The evidence before and findings and conclusions by the trial court did not

utilize the factors from Poore or the IRS for valuing a business. The trial court’s order

made no mention of the nature of the business and the history of the enterprise from

its inception, the economic outlook in general and the condition and outlook of the

specific industry in particular, the financial condition of the business, the company’s

earning capacity, the market price of corporations engaged in the same or a similar

line of business, or factors that led to the finding of intangible goodwill.

 - 16 -
 STOWE V. STOWE

 Opinion of the Court

 The trial court did not address the framework in Poore in finding and valuing

goodwill. It simply addressed the amount of goodwill by concluding Madison “had

certain goodwill.” Outside of this conclusory statement, the trial court began

consideration of the appropriate multiplier to apply to the goodwill, even though the

multiplier was derived from a non-analogous source applying un-adjusted factors.

 The trial court failed to address “the age, health, and professional reputation

of the practitioner, the nature of the practice, the length of time the practice has been

in existence, its past profits, its comparative professional success, and the value of its

other assets.” Poore, 75 N.C. App. at 421, 331 S.E.2d at 271.

 The trial court merely evaluated one years’ past performance in the form of a

balance sheet and a tax return. While there may ultimately be goodwill or other

intangible assets to include, the trial court did not conduct any further analysis to

support the conclusion of value of goodwill. Id. at 422, 331 S.E.2d at 272.

 3. Apportionment of Revenue

 During direct examination, Defendant testified:

 [Defense Counsel]: So in 2016 the corporation earned
 commissions of $217,534?

 [Defendant]: Yes.

 [Defense Counsel]: What was the – where did the cash
 assets bank accounts come from?

 [Defendant]: They came from that revenue.

 - 17 -
 STOWE V. STOWE

 Opinion of the Court

 [Defense Counsel]: So you have [$]217,000 and then
 [$]24,790 that’s actually the same funds?

 [Defendant]: Correct.

 ...

 [Defense Counsel]: And the monies that were paid to Andy
 Stowe of the loans the corporation made to Andy Stowe,
 what were the source of funds for those amounts?

 [Defendant]: That revenue.

 [Defense Counsel]: The [$]217,534?

 [Defendant]: That’s correct.

 Shriner counted the cash asset and note receivable twice in the asset section:

as both revenue in the annual revenue and as an account. Neither Shriner’s

testimony, Shriner’s letter, nor the trial court’s order provides a remodeling or reason

for this double count of these amounts.

 Defendant argues our Supreme Court’s reasoning in Seifert is controlling.

Seifert v. Seifert, 319 N.C. 367, 354 S.E.2d 506 (1987). In Seifert, the Supreme Court

of North Carolina examined a double reduction of the value in an equitable

distribution calculation of a military service member’s pension. The Court held: “The

effect is an unfair or inequitable reduction in the value of the award between the date

of separation and the date of the employee-spouse’s retirement.” Id. at 371, 354

S.E.2d at 509-10. The Court in Seifert prohibited a double discount.

 - 18 -
 STOWE V. STOWE

 Opinion of the Court

 What occurred here is a double credit. While not controlling, it is instructive

to the facts before us. Allowing the double credit of the same funds created an “unfair”

and “inequitable” increase in the value of the company. Id.

 The trial court erred in calculating the value of Madison by utilizing

incompetent evidence, conducting an improper valuation of Madison incorporating

methodology that did not approximate the value of the practice and goodwill, and by

double counting revenue in the calculation. We reverse these portions of the order

and remand to the trial court for additional findings and calculations of the value of

Madison to support its conclusions. See id.

 V. Refusal to Qualify Franks as an Expert

 A. Preservation

 Defendant argues the trial court erred by not accepting Franks as an expert

witness in the field of business valuation. Plaintiff asserts the issue is not properly

preserved for appellate review by this Court.

 N.C. R. App. P. 10(a)(1) requires: “In order to preserve an issue for appellate

review, a party must have presented to the trial court a timely request, objection, or

motion, stating the specific grounds for the ruling the party desired the court to make

if the specific grounds were not apparent from the context.” During the trial, Franks

was qualified as an expert witness in the field of certified public accounting. When

 - 19 -
 STOWE V. STOWE

 Opinion of the Court

defense counsel sought to ask Franks a question about the methodology of business

valuation Plaintiff objected and asserted a Daubert challenge:

 [Plaintiff’s Counsel]: Your Honor, he was not qualified as a
 business valuation expert. He was qualified as a CPA. He’s
 not establishing appropriate methodology. And based on
 [N.C. Gen. Stat. §] 8C-702, I don’t think the expert evidence
 that he’s presenting passes a Daubert challenge.

 [Court]: There’s been a Daubert challenge made. [Defense
 Counsel] would you like to respond to that?

 [Defense Counsel]: Your Honor, I don’t think there’s any
 question that this expert has specialized knowledge. I don’t
 think there’s any question that his testimony can assist the
 Court to understand some of the issues in this case. The
 weight you give it is totally up to the Court. It’s not an
 admissibility issue, it’s a weight issue. The basis of his
 opinion is based upon facts known to him and reasonably
 relied upon by experts. You have testimony before this
 Court from Mr. Shriner that the rule of thumb is the
 appropriate methodology. That’s the methodology he used.
 You have testimony from Mr. Franks that that is also the
 methodology that he used. It appears the only difference is
 the multiple factor used, and I think he is surely competent
 in his experience to tell what that should be.

 ...

 [Plaintiff’s Counsel]: The difference between Mr. Shriner
 and Mr. Franks is that Mr. Shriner was admitted as a
 business valuation expert. Mr. Franks has not been
 admitted as a business valuation expert. And under North
 Carolina Law, as a CPA he cannot render an opinion. This
 is no more than a personal opinion and it is not something
 - - under same rule with Mr. Stowe providing that same
 impression or belief of what the value was. When we go
 through this - - and again, Your Honor hasn’t, I don’t
 believe, reviewed the evaluation. But nothing on this

 - 20 -
 STOWE V. STOWE

 Opinion of the Court

evaluation that he has presented lays out his multiplier.
Nothing in his evaluation does anything other than say I
think this. [That] is not an appropriate standard under
Daubert. Because he has not been admitted as an expert in
business valuation all he can testify to - - I guess he can
opine as to the cash flow, the taxes and everything else, but
it is not a business valuation that’s subject to being
admitted by this Court, because again it does not provide
assistance to this Court. It does not rely upon principles. I
don’t believe that he - - again, there’s a reason why Your
Honor did not admit him as a business valuation expert.
He doesn’t have the basis, the credentialing and the skill
set to provide assistance to Your Honor. So again, under
702 and under the case law of Daubert moving for, most
recently, as State versus McCreevy (ph), I don’t believe he’s
competent to testify as to this business value.

...

[Defense Counsel]: Your Honor, I think the admissibility
test is, is he qualified by knowledge, skill, experience,
training and education, and I think that he is. The weight
that you give is up to you, but it’s not admissibility. It is
relevant. It is. We’re before this Court on this. And is it
reliable, and I think it is reliable. And I think particularly
when you look at it in light of he’s used the same
methodology as Foster Shriner. And he has also had the
benefit of having owned an insurance company and been
actively involved in the running of the company and knows
how it works when Mr. Foster Shriner has not. So I think
we do have admissibility. And I think having heard his
testimony I would reoffer him as an expert in the area of
business evaluations based upon his history and his
involvement in the insurance business.

[Court]: Counsel, thank you. The Court will sustain the
objection. The Court will not qualify Mr. Franks as an
expert in the area of business valuation. You may ask
another question, counselor.

 - 21 -
 STOWE V. STOWE

 Opinion of the Court

 Defendant asserts Plaintiff’s objection that was sustained by the trial court is

error. When an objection is sustained, our precedents and appellate rules do not

require the other party to register their own objection on top of having the objection

sustained against them. See N.C. R. App. P. 10(a)(1). N.C. R. App. P. 10(a)(1) applies

when a party failed to object to an action in the trial court and then claims error on

appeal. Plaintiff improperly seeks to assert an inverse of N.C. R. App. P. 10(a)(1),

where a party does not object and thus has not preserved the issue for appellate

review, to bar this Court’s review of the issue. Plaintiff’s argument is dismissed.

 Plaintiff further asserts Defendant did not properly notice Franks’ expert

testimony prior to trial. N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1) (2019). Rule

26(b)(4)(a)(1) mandates the disclosure of any experts prior to trial. This Court

recently interpreted this rule in Myers v. Myers, holding: “The Rule does require

advance disclosure of expert witnesses who will testify at trial, even without a

discovery request, discovery plan, or court order.” Myers v. Myers, __ N.C. App. __, __,

837 S.E.2d 443, 456-57 (2020).

 Plaintiff’s argument relies on the premise that the only remedy for a discovery

violation is exclusion. The goal of N.C. Gen. Stat. §1A-1, Rule 26(b)(4)(a)(1) is “to

provide openness and avoid unfair tactical advantage in the presentation of a case at

trial[.]” N.C. Gen. Stat. § 1A-1, Rule 26(b)(4)(a)(1). The court in Myers leaves the

determination of the proper remedy to the discretion of the trial court. Myers, __ N.C.

 - 22 -
 STOWE V. STOWE

 Opinion of the Court

App. at __, 837 S.E.2d at 457. In light of a discovery violation, Myers requires a trial

court to determine “whether [Defendant’s] failure to disclose the expert sufficiently

in advance of the trial gave h[im] an ‘unfair tactical advantage’ at trial or defeated

the purpose of ‘providing openness’ as contemplated by Rule 26(b).” Myers, __ N.C.

App. at __, 837 S.E.2d at 456. Plaintiff misstates the remedy for this alleged discovery

violation. Id. (“Here, the trial court’s interpretation of Rule 26(b)(4)(a)(1) as requiring

exclusion of [the expert’s] testimony was in error.” (emphasis original)). In light of

our holding on this issue, additional findings by the trial court on sanctions are not

required on remand.

 B. Standards of Review

 “A trial court may be reversed for abuse of discretion only upon a showing that

its actions are manifestly unsupported by reason . . . that it could not have been the

result of a reasoned decision.” White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833

(1985) (citation omitted).

 “Where the plaintiff contends the trial court’s decision is based on an incorrect

reading and interpretation of the rule governing admissibility of expert testimony,

the standard of review on appeal is de novo.” Cornett v. Watauga Surgical Grp., 194

N.C. App. 490, 493, 669 S.E.2d 805, 807 (2008).

 C. Analysis

 - 23 -
 STOWE V. STOWE

 Opinion of the Court

 This Court reviews this issue for abuse of discretion. Id. Defendant does not

challenge the trial court’s interpretation of N.C. Gen. Stat. § 8C-1, Rule 702 (2019).

Defendant proffered Franks as an expert in “business valuation in forensic

accounting and certified public accounting.” Plaintiff requested a voir dire to question

Franks’ qualifications:

 [Plaintiff’s Counsel]: How many CPE courses do you take
 on a yearly basis in business valuation?

 [Franks]: Usually one.

 ...

 [Plaintiff’s Counsel]: And are you specialized or do you
 have any specialization under AICPA - -

 [Franks]: I do not

 [Plaintiff’s Counsel]: - - - business valuation?

 [Franks]: No,

 [Plaintiff’s Counsel]: So you are not a CVA - - strike that,
 and ABV under the AICPA?

 [Franks]: No.

 [Plaintiff’s Counsel]: Do you have any specialized
 accreditation under NACVA?

 [Franks]: I do not.

 - 24 -
 STOWE V. STOWE

 Opinion of the Court

 Franks is a North Carolina licensed certified public accountant and owner of

an accounting firm whose practice consists of business valuations, taxes, accounting,

and tax planning. The trial court held:

 The Husband tendered an expert witness, Mr. Tom Franks,
 for the purposes of placing value on the business entity.
 The witness was tendered as an expert in business
 valuation, certified public accounting and forensic
 accounting; upon examination by counsel for the Wife, the
 Court found that the witness was a certified public
 accountant, however, had minimal business valuation
 experience, maintained minimal continuing education in
 business valuation methodologies, has not prepared
 business valuations for insurance agencies more than twice
 in the preceding 30 years and that these were for the
 purposes of assisting a client in the purchase of an agency.
 The Court accepted Mr. Franks as an expert witness in
 certified public accounting, however, did not find him to be
 an expert in business valuation or forensic accounting.
 Accordingly, the Court did not consider the witness’s
 testimony regarding a business value for Madison
 Insurance Group, Inc.

N.C. Gen. Stat. § 8C-1, Rule 702(a) provides:

 If scientific, technical or other specialized knowledge will
 assist the trier of fact to understand the evidence or to
 determine a fact in issue, a witness qualified as an expert
 by knowledge, skill, experience, training, or education, may
 testify thereto in the form of an opinion, or otherwise, if all
 of the following apply:

 (1) The testimony is based upon sufficient facts or data.

 (2) The testimony is the product of reliable principles
 and methods.

 - 25 -
 STOWE V. STOWE

 Opinion of the Court

 (3) The witness has applied the principles and methods
 reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a).

 The Supreme Court of North Carolina has recently interpreted Rule 702(a)

and examined leading cases interpreting Rule 702(a) by the Supreme Court of the

United States: Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L.

Ed. 2d 469 (1993); General Electric Co. v. Joiner, 522 U.S. 136, 139 L. Ed. 2d 508

(1997); and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 143 L. Ed. 2d 238 (1999).

Our Supreme Court held:

 the witness must be qualified as an expert by knowledge,
 skill, experience, training, or education. This portion of the
 rule focuses on the witness’s competence to testify as an
 expert in the field of his or her proposed testimony.
 Expertise can come from practical experience as much as
 from academic training. Whatever the source of the
 witness’s knowledge, the question remains the same: Does
 the witness have enough expertise to be in a better position
 than the trier of fact to have an opinion on the subject? The
 rule does not mandate that the witness always have a
 particular degree or certification, or practice a particular
 profession. But this does not mean that the trial court
 cannot screen the evidence based on the expert’s
 qualifications. In some cases, degrees or certifications may
 play a role in determining the witness’s qualifications,
 depending on the content of the witness’s testimony and
 the field of the witness’s purported expertise. As is true
 with respect to other aspects of Rule 702(a), the trial court
 has the discretion to determine whether the witness is
 sufficiently qualified to testify in that field.

 - 26 -
 STOWE V. STOWE

 Opinion of the Court

State v. McGrady, 368 N.C. 880, 889-90, 787 S.E.2d 1, 9 (2016) (citations and

quotation marks omitted).

 Contrary to Defendant’s arguments before the trial court and this Court,

Franks’ qualifications are pertinent to admissibility, not just weight or credibility of

the testimony. See id. (“Rule 702(a) has three main parts, and expert testimony must

satisfy each to be admissible.”).

 Defendant has failed to show the trial court abused or did not act within its

discretion when the court concluded not to admit Franks as an expert in the field of

business valuations. Id. Defendant’s argument is overruled.

 VI. Tax Implications

 Defendant contends the trial court erred by calculating imbedded taxes for

retirement accounts but not for Madison when the same testimony was presented for

both assets.

 A. Standard of Review

 When reviewing an equitable distribution order, our standard of review “is

limited to a determination of whether there was a clear abuse of discretion.” White,

312 N.C. at 777, 324 S.E.2d at 833. “A trial court may be reversed for abuse of

discretion only upon a showing that its actions are manifestly unsupported by

reason.” Id.

 B. Analysis

 - 27 -
 STOWE V. STOWE

 Opinion of the Court

 “[E]quitable distribution is a three-step process requiring the trial court to (1)

determine what is marital and divisible property; (2) find the net value of the

property; and (3) make an equitable distribution of that property.” Petty v. Petty, 199

N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009) (citation, quotation marks, and

brackets omitted).

 N.C. Gen. Stat. § 50-20(c)(11) provides that the trial court shall consider the

following distributive factor when equitably dividing the marital and divisible

property:

 The tax consequences to each party, including those federal
 and State tax consequences that would have been incurred
 if the marital and divisible property had been sold or
 liquidated on the date of valuation. The trial court may,
 however, in its discretion, consider whether or when such
 tax consequences are reasonably likely to occur in
 determining the equitable value deemed appropriate for
 this factor.

N.C. Gen. Stat. § 50-20(c)(11) (2019).

 The trial court made the following finding of fact:

 That with regards to the American Traditional IRA, the
 Lumina Wealth IRA and the Principal 401(k) as set forth
 in the preceding paragraph, the parties presented evidence
 regarding embedded tax consequences and the value of
 these accounts . . . . That these are pretax retirement plans
 from which no taxes have been withheld. These accounts
 are fully subject to taxation at such time as the funds are
 withdrawn; at the present time, should these funds be
 withdrawn, there would also be a 10% penalty. The Court
 finds that there is no evidence that these accounts will be
 immediately liquidated, however, the Court further finds,

 - 28 -
 STOWE V. STOWE

 Opinion of the Court

 based upon the credible testimony of Mr. Shriner, that these
 accounts will have taxable consequences at such time as
 they are liquidated. Mr. Shriner further testified, and the
 Court finds credible, that a 25% reduction in value is
 appropriate for purposes of valuing these assets when
 dividing these assets in exchange for post-tax or net of tax
 assets. (emphasis supplied)

 The equitable distribution order distributed the IRA and 401(k) accounts. The

trial court found if the funds are withdrawn at the present time, a ten percent penalty

would be assessed. Additionally, the trial court also found “there is no evidence that

these accounts will be immediately liquidated.” The trial court further found when

the funds are withdrawn, it will be a taxable event. The trial court thus reduced the

value of each account by twenty-five percent to account for the tax consequences,

reducing the American Traditional IRA from $138,847.65 to $104,135.74, the Lumina

Wealth IRA from $20,601 to $15,450.75, and the Principal 401(k) from $28,362 to

$21,271.50.

 The trial court based its tax treatment on the potential future liquidation of

the accounts. “Valuation of marital property may include tax consequences from the

sale of an asset only when the sale is imminent and inevitable, rather than

hypothetical or speculative.” Peltzer, 222 N.C. App. at 797, 732 S.E.2d at 366

(citations omitted) (emphasis supplied). “It is error for a trial court to consider

hypothetical tax consequences as a distributive factor.” Plummer v. Plummer, 198

N.C. App. 538, 548 680 S.E.2d 746, 753 (2009) (internal quotation marks omitted).

 - 29 -
 STOWE V. STOWE

 Opinion of the Court

 The trial court erred by reducing the accounts as a result of a hypothetical tax

consequence when the sale or liquidation of the retirement accounts was not

“imminent and inevitable,” or that the equitable distribution would be a taxable

event. Peltzer, 222 N.C. App. at 797, 732 S.E.2d at 366. We reverse these portions of

the order and remand for additional findings and calculations of the tax consequences

and valuations of the retirement accounts.

 VII. Improper Joinder

 Defendant argues the note payable was owed to Madison and it was error for

the trial court to distribute payments on a note payable of the company to Plaintiff

without joining Madison in the action.

 The parties and their respective counsels entered a memorandum of judgment

on 13 August 2018 addressing the loan underlying the note payable. By agreement

the note payable was classified as a loan owed to the marriage in the amount of

$97,206.90. Defendant had accepted the first fifty percent of the loan repayment

individually and used the funds for his and Madison’s benefit. The parties agreed the

remaining balance was owed to Plaintiff as an interim distribution. Defendant is

bound to the memorandum of judgment. See Smith v. Smith, 247 N.C. App. 135, 786

S.E.2d 12 (2016). Defendant’s argument is dismissed.

 VIII. Conclusion

 - 30 -
 STOWE V. STOWE

 Opinion of the Court

 We affirm the trial court’s treatment of the payments from the note payable

and the trial court’s denial of admitting Franks as an expert witness in business

valuation. We reverse the trial court’s finding and conclusion valuing Madison and

assessing a hypothetical tax consequence without a finding and conclusion the sale

or liquidation of the retirement accounts was “imminent and inevitable” to trigger

the penalty. Peltzer, 222 N.C. App. at 797, 732 S.E.2d at 366.

 These portions of the trial court’s order are reversed and remanded for further

proceedings not inconsistent herewith. It is so ordered.

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

 Judges BERGER and COLLINS concur.

 - 31 -